```
------------------------------- x
INCLUSION FIRST, LLC,            :
                                 :
         Plaintiff,              :   Civil No. 3:14-cv-1786(AWT)
                                 :
v.                               :
                                 :
TERRENCE W. MACY, in his         :
official capacity as             :
Commissioner of Department of    :
Developmental Services, and      :
RODERICK L. BREMBY, in  his      :
official capacity as             :
Commissioner of Social Services, :
                                 :
         Defendants.             :
------------------------------- x
```

## RULING ON JOINT MOTION TO DISMISS

The plaintiff, Inclusion First, LLC ("Inclusion First")[1]
brings this action seeking declaratory and injunctive relief
against Terrance W. Macy, in his official capacity as
Commissioner of Department of Developmental Services ("DDS"),
and Roderick L. Bremby, in his official capacity as Commissioner
of Social Services ("DSS"). The complaint has six counts:
procedural violation of 42 U.S.C. §1396a/Supremacy Clause (Count
One); taking of private property without just compensation in
violation of the Fifth Amendment of the United States

---

[1] Ronna Marie Guiliano is Inclusion First LLC's principal and
sole member. The plaintiff will be referred to as "the
plaintiff," "Inclusion First," and "she."

Constitution (Count Two); taking of private property without
just compensation in violation of Article I, §11 of the
Connecticut Constitution (Count Three); violation of the
Medicaid Act and the Final Rule (Count Four); pursuant to 42
U.S.C. §1983, retaliation for exercising First Amendment rights
(Count Five); and (6) declaratory judgment (Count Six).

The defendants have moved to dismiss Counts One through
Four for lack of subject matter jurisdiction pursuant to Fed. R.
Civ. P. Rule 12(b)(1) and for failure to state a claim upon
which relief can be granted pursuant to Fed. R. Civ. P. Rule
12(b)(6). They also move to dismiss Counts Five and Six for
failure to state a claim upon which relief can be granted,
pursuant to Fed. R. Civ. P. Rule 12(b)(6). For the reasons set
forth below the joint to dismiss is being granted as to all
counts, but with leave to file a motion to amend with respect to
Count Five.

## I.  FACTUAL BACKGROUND

"The complaint, which [the court] must accept as true for
purposes of testing its sufficiency, alleges the following
circumstances." <u>Monsky v. Moraghan</u>, 127 F.3d 243, 244 (2d Cir.
1997).

This case relates to Connecticut's administration of the
federal Medicaid program. The plaintiff alleges that DSS is

Connecticut's "single state Medicaid agency" and DDS is the "operating authority" responsible for providing Medicaid services directly through DDS and indirectly by contracting with outside vendors. (Complaint for Declaratory Judgment and Injunctive Relief (Doc. No. 1) ("Complaint") ¶¶ 9a[2], 10.) In order to participate in the federal Medicaid program, states must present a "state plan for medical assistance" to the Centers for Medicare and Medicaid Services (CMS), an "operating component of the United States Department of Health and Human Services." (Complaint ¶ 8a.) In this plan, states must establish "a set rate for payment of its vendors." (Complaint ¶ 9a.)

Inclusion First is a single member Connecticut LLC that provides mentoring services to people with disabilities in Connecticut. Inclusion First became a "qualified vendor of DDS in or around 2005." (Complaint ¶ 11.) For eight or nine years, Inclusion First operated under a "POS contract, payment for services rendered." (Complaint ¶ 21.) "In Fiscal year 2013, the DDS began to transfer all of its vendors to a 'Purchase of Service Contract.'" (Complaint ¶ 12.) The plaintiff alleges that, under a Purchase of Service contract, DDS pays vendors in advance (at its published rate) based on the amount of services

---

[2] The Complaint contains two paragraph 8s and two paragraph 9s. Accordingly, the first paragraph 8 is referred to as ¶ 8a, and the second paragraph 8 is referred to as ¶ 8b. Likewise, the first paragraph 9 is referred to as ¶ 9a, and the second paragraph 9 is referred to as ¶ 9b.

it expects the vendor will provide that month. The vendor reports its time for each month and at the end of the fiscal year, after extensive auditing required by DDS, the vendor is required to "return . . . any profit that the vendor has earned to the State." (Complaint ¶ 16.) The plaintiff refers to this process as "cost settling." (Complaint ¶ 16.)

The plaintiff alleges that this "cost settling" was not disclosed to the CMS in the state's plan along with the published rate. Consequently, "[t]his return of funds or cost settling violates the Medicaid Act and the Final Rule as the providers are not ultimately paid the published rate. Each provider is paid a different rate based on the costs to run their business." (Complaint ¶ 17.) Also, Connecticut's cost settlement process "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress, and thus should be preempted." (Complaint ¶ 19.)

Inclusion First alleges that "[w]hen entering into the Contract, DDS refused to negotiate rates or terms and directly stated that if Inclusion First, LLC failed to sign the contract they would refuse to give Inclusion First, LLC, clients." (Complaint ¶ 22.) One hundred percent of Inclusions First's clients are referred by DDS and, as a result, "if Inclusion First, LLC failed to sign the contract, it would not have any adult clients to service and would have to shut down."

(Complaint ¶ 23.) The state has "continually audit[ed]" the
plaintiff's business, and "[t]he state now seeks to
retroactively take back a portion of [its payment to
Inclusion]." (Complaint ¶ 27; Complaint, Count II, ¶ 32.) The
plaintiff alleges that "[e]ach day Connecticut is allowed to
operate in the illegal manner, plaintiff loses thousands of
dollars that may result in the closing of the business."
(Complaint ¶ 26.) The plaintiff further alleges that "[o]ther
companies providing vendor services to DDS have been forced to
go out of business at an alarming rate." (Complaint ¶ 27.)

The plaintiff alleges that the plaintiff's principal and
sole member spoke out against the cost settling policy to
employees of DDS, employees of DSS, the governor, gubernatorial
candidates, and the press, and that DDS has retaliated against
her for doing so. Specifically, "DDS through its employees
retaliated against plaintiff by targeting her employees,
inviting them to violate the non-compete agreement that they
signed with Inclusion First, recommending the employees either
provide the services directly to the consumer [or] become [an]
employee of DDS or an employee of a 'preferred' non-profit
organization." (Complaint, Preliminary Statement.) Employees of
DDS have tried to recruit clients away from Inclusion First, and
that has "subjected plaintiff [to] multiple and harassing audits
also in an attempt to interrupt plaintiff's business."

(Complaint, Preliminary Statement.) "Plaintiff's business is being irreparably damaged by the actions of DDS and its employees in that their actions are designed to harass and annoy the plaintiff and reduce and destroy the business and as a result, the business may have to close and its employees to be laid off." (Complaint, Count V, ¶32.)

## II.    LEGAL STANDARD

A claim is properly dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. Rule 12(b)(1) when the court lacks the statutory or constitutional power to adjudicate the claim. Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1187 (2d Cir.1996). On a Rule 12(b)(1) motion to dismiss, the party asserting subject matter jurisdiction bears the burden of proving subject matter jurisdiction. See Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir.2005). When reviewing a motion to dismiss for lack of subject matter jurisdiction, the court may consider evidence outside the pleadings. *See* Makarova v. United States, 201 F.3d 110, 113 (2d Cir.2000).

"[T]he standards for reviewing dismissals granted under 12(b)(1) and 12(b)(6) are identical."  Moore v. Paine Webber Inc., 189 F.3d 165, 169 n.3 (2d Cir. 1999). When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as

true all factual allegations in the complaint and must draw
inferences in a light most favorable to the plaintiff.  Scheuer
v. Rhodes, 416 U.S. 232, 236 (1974).  Although a complaint "does
not need detailed factual allegations, a plaintiff's obligation
to provide the 'grounds' of his 'entitle[ment] to relief'
requires more than labels and conclusions, and a formulaic
recitation of the elements of a cause of action will not do."
Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), citing
Papasan v. Allain, 478 U.S. 265, 286 (1986)(on a motion to
dismiss, courts "are not bound to accept as true a legal
conclusion couched as a factual allegation").  "Nor does a
complaint suffice if it tenders 'naked assertion[s]' devoid of
'further factual enhancement.'"  Ashcroft v. Iqbal, 556 U.S.
662, 678 (2009)(quoting Twombly, 550 U.S. at 557).  "Factual
allegations must be enough to raise a right to relief above the
speculative level, on the assumption that all allegations in the
complaint are true (even if doubtful in fact)."  Twombly, 550
U.S. at 555 (citations omitted).  However, the plaintiff must
plead "only enough facts to state a claim to relief that is
plausible on its face."  Id. at 570.  "The function of a motion
to dismiss is 'merely to assess the legal feasibility of the
complaint, not to assay the weight of the evidence which might
be offered in support thereof.'"  Mytych v. May Dept. Store Co.,
34 F. Supp. 2d 130, 131 (D. Conn. 1999), quoting Ryder Energy

-7-

Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774,

779 (2d Cir. 1984). "The issue on a motion to dismiss is not

whether the plaintiff will prevail, but whether the plaintiff is

entitled to offer evidence to support his claims." United

States v. Yale New Haven Hosp., 727 F. Supp. 784, 786 (D. Conn.

1990) (citing Scheuer, 416 U.S. at 232).

In its review of a motion to dismiss for failure to state a

claim, the court may consider "only the facts alleged in the

pleadings, documents attached as exhibits or incorporated by

reference in the pleadings and matters of which judicial notice

may be taken." Samuels v. Air Transport Local 504, 992 F.2d 12,

15 (2d Cir. 1993).


**III.    DISCUSSION**

**A. Medicaid Act Violation/Supremacy Clause (Count I)**

In Count I, the plaintiff alleges a "procedural violation of 42

U.S.C. §1396a/Supremacy Clause." (Complaint, Count I.) She

claims that "Medicaid 42 U.S.C. 1936a et seq. requires a

standard rate for vendors, thus Connecticut's practice of

requiring cost settling is pre-empted by federal law and thus is

null and void." (Complaint, Count I, ¶ 29.) The defendants argue

that the plaintiff lacks standing, asserting that she fails to

state an injury in fact and that her claim is not ripe for

adjudication because it is premised on a speculative injury.

-8-

(Joint Memorandum in Support of Motion to Dismiss (Doc. No. 20) ("Defendants' Memorandum").) The defendants also argue that the plaintiff has failed to state a claim upon which relief can be granted because neither the Supremacy Clause nor the Medicaid Act provides a private right of action.

As set forth in <u>Lujan v. Defenders of Wildlife</u>, the elements of standing are as follows:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." "The party invoking jurisdiction bears the burden of establishing these elements."

504 U.S. 555, 560-61 (1992)(citations omitted).

The plaintiff has alleged facts that could establish an injury in fact. She alleges that "Connecticut's practice of requiring cost settling is pre-empted by federal law and thus is null and void." (Complaint, Count I, ¶ 29.) She also alleges that "[e]ach day Connecticut is allowed to operate in the illegal manner, plaintiff loses thousands of dollars that may result in the closing of the business" and that "[o]ther companies providing vendor services to DDS have been forced to go out of business at an alarming rate." (Complaint ¶¶ 26-27.)

Such allegations adequately establish a plausible claim that the plaintiff has suffered an injury in fact that is traceable to the challenged actions of the defendants.

However, even though the plaintiff appears to have adequately pled an injury in fact, this count should be dismissed for failure to state a claim upon which relief can be granted. The Supreme Court in Armstrong v. Exceptional Child Center, Inc., 135 S.Ct. 1378 (2015), recently addressed a fact-pattern and allegation similar to those asserted by Inclusion First in this case. In Armstrong, providers of services covered by Idaho's Medicaid "plan" sued state officials in Idaho's Department of Health and Welfare "claiming that Idaho violates §30(A) by reimbursing providers of habilitation services at rates lower than § 30(A) permits." 135 S.Ct. at 1382.[3] The Court addressed "whether or not there was an implied right of action under the Supremacy Clause to seek injunctive relief against the enforcement or implementation of state legislation." Id. at 1383 (citing Inclusion, Inc. v. Armstrong, 567 Fed. Appx. 496, 497 (2014)). The Court concluded that "the Supremacy Clause is not the 'source of any federal rights,' and certainly does not create a cause of action." Id. at 1383 (citing Golden State

---

[3] Inclusion First does not cite a particular section of the Medicaid Act, 42 U.S.C. § 1396 et seq., that was allegedly violated in this case.

<u>Transit Corp. v. Los Angeles</u>, 493 U.S. 103, 107 (1989)).[4] The

Court further concluded that "Section 30(A) lacks the sort of

rights-creating language needed to create a private right of

action." <u>Id.</u> at 1387. Accordingly, the Court held that neither

the Supremacy Clause nor the Medicaid Act provided a private

right of action to the providers.

Because neither the Medicaid Act nor the Supremacy Clause

provides the plaintiff with a private right of action, Count I

is being dismissed for failure to state a claim upon which

relief can be granted, pursuant to Fed. R. Civ. P. Rule

12(b)(6).


**B. Fifth Amendment Takings Clause (Count II)**

In Count II, the plaintiff alleges that Inclusion First has

"a legally cognizable property interest. It performed the

services and received payment at the published rate. The State

now seeks to retroactively take back a portion of this payment."

(Complaint, Count II.) The plaintiff alleges that this is a

violation of the Takings Clause of the Fifth Amendment of the

United States Constitution. The defendants move to dismiss this

claim, pursuant to Fed. R. Civ. P. Rule 12(b)(1), for lack of

---

[4] The respondents in <u>Armstrong</u> also contended that their suit
could proceed in equity. The Court held that "the Medicaid Act
implicitly precludes private enforcement of § 30(a), and
respondents cannot, by invoking our equitable powers, circumvent
Congress's exclusion of private enforcement." <u>Id.</u> at 1385.

subject matter jurisdiction on the grounds that (1) "plaintiff has not adequately alleged facts demonstrating 'injury in fact' or 'standing[,]'" and (2) "prudential" and "ripeness" grounds are not satisfied. (Defendants' Memorandum at 33.) The defendants also move to dismiss this claim under Fed. R. Civ. P. Rule 12(b)(6).

The court dismisses this claim pursuant to Fed. R. Civ. P. Rule 12(b)(1) on the grounds that the plaintiff's claim is not ripe for adjudication. Under Fifth Amendment jurisprudence, "a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." Williamson v. Cty. Reg'l Planning Com'n v. Hamilton Bank, 473 U.S. 172, 186 (1985). Additionally, for a claim to be ripe, the plaintiff must first "seek compensation through the procedures the State has provided for doing so." Id. at 194. The plaintiff alleges that "[t]he State now seeks to retroactively take back a portion of this payment" (Complaint, Count II, ¶ 32), but this allegation is unclear with respect to whether a final decision has been reached. However, even assuming arguendo that she has adequately pled that a final decision has been reached, the plaintiff has failed to allege that she has made any attempt to seek compensation through the

procedures provided by the State. Accordingly, her claim is not ripe and being dismissed for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. Rule 12(b)(1).

Additionally, even if her claim were ripe, the plaintiff has failed to allege facts sufficient to support a plausible Fifth Amendment claim. In order to state a Takings Clause claim, the plaintiff must allege facts sufficient to establish a "protected property interest." Story v. Green, 978 F.2d 60, 62 (2d Cir. 1992. The plaintiff alleges that she has "a legally cognizable property interest" (Complaint, Count II, ¶ 32), but fails to identify this interest or allege facts sufficient to support this legal conclusion. Her allegation is merely a "'naked assertion' devoid of 'further factual enhancement.'" Ashcroft 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). Because she has failed to sufficiently allege that she has a protected property interest, the plaintiff's claim is also being dismissed for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. Rule 12(b)(6).

To the extent that the plaintiff's Takings Clause claim is premised on the fact that she was "forced" to enter into a contract that required auditing and the return of profits, her claim also fails. In Garelick v. Sullivan, 987 F.2d 913 (2d Cir. 1993), the court stated that "[a] property owner must be legally compelled to engage in price-regulated activity for regulations

-13-

to give rise to a taking. . . . [W]here a service provider voluntarily participates in a price-regulated program or activity, there is no legal compulsion to provide service and thus there can be no taking." Id. at 916. The plaintiff is not required to contract with the DDS. Therefore, to the extent that the plaintiff bases her taking claim on allegations that she was "forced" into a contract requiring strict auditing and no profits, she has failed to state a claim upon which relief can be granted and her claim is being dismissed pursuant to Fed. R. Civ. P. Rule 12(b)(6).

### C. Connecticut Takings Clause (Count III)

The plaintiff also seeks declaratory and injunctive relief based on a violation of Article I, Section 11 of the Connecticut Constitution, which provides "[t]he property of no person shall be taken for public use, without just compensation therefor." Federal courts do not have jurisdiction over claims against state officials premised on violations of state law. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 121 (1984). This applies to state law claims brought to the federal courts under supplemental jurisdiction. Accordingly, the court has no subject matter jurisdiction over Count III and claim is being dismissed pursuant to Fed. R. Civ. P. Rule 12(b)(1).

**D. Count IV**

The plaintiff does not clearly state what the cause of action is in Count IV. It appears the plaintiff is arguing preemption as she did in Count I. In Count IV, she alleges that the DDS "is sabotaging the competitive market" that the Medicaid Waiver Program was designed to create, and thus, "DDS' policy and behaviors has [have] violated the Medicaid Act and the Final Rule and seeks to inhibit the execution and the full purpose and objectives of Congress and thus should be preempted." (Complaint, Count IV, ¶¶ 31, 34.) The defendants move to dismiss Count IV for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. Rule 12(b)(1), and for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. Rule 12(b)(1).

To the extent that the plaintiff is asserting a preemption claim as she was in Count I, Count IV is likewise being dismissed for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. Rule 12(b)(6).

The plaintiff also appears to allege a violation of the rights of third-parties. She alleges that DDS has told clients that if they choose vendors like Inclusion, DDS will "remove hours from the client," which will "effectively reduc[e] the budget for the disabled individual." (Complaint, Count IV, ¶ 33.) The plaintiff alleges that this "undermin[es] the

individual's right to choose Plaintiff." (Complaint, Count IV, ¶ 33.) In order to establish third party standing, the plaintiff must establish (1) that the plaintiff has "suffered an 'injury in fact,' thus giving him or her a 'sufficiently concrete interest' in the outcome of the issue in dispute," (2) that the plaintiff "ha[s] a close relationship to the third party" and (3) "there . . . exist[s] some hindrance to the third party's ability to protect her or her own interests." Powers v. Ohio, 499 U.S. 400, 410-11 (1991). Inclusion Fist has failed to allege facts sufficient to establish any of these elements. Accordingly, to the extent that the plaintiff seeks to allege violations of the rights of third-parties, Count IV is also being dismissed for lack of standing pursuant to Fed. R. Civ. P. Rule 12(b)(1).

### E. First Amendment (Count V)

The defendants move to dismiss this claim, pursuant to Fed. R. Civ. P. Rule 12(b)(6), on the grounds that the plaintiff has failed to establish a prima facie case of retaliation.

There is no "meaningful distinction" between independent contractors and government employees for purposes of First Amendment retaliation claims. Golodner v. Berliner, 770 F.3d 196, 207 (2014) (citing Board of County Commissioners v. Umbehr, 518 U.S. 668, 677-85 (1996)). Accordingly, the test for public

employees applies to the plaintiff in this case. To establish a

First Amendment retaliation claim, a public employee must allege

that

> [1] he has engaged in protected First Amendment activity,
> [2] he suffered an adverse employment action, and [3] there
> was a causal connection between the protected activity and
> the adverse employment action.

Smith v. Cnty. of Suffolk, 776 F.3d 114, 118 (2d Cir.

2015)(quoting Dillon v. Morano, 497 F.3d 247, 251 (2d Cir.

2007))(internal quotation marks omitted).[5]

The defendants argue that the plaintiff's claim fails

because her speech was not on a matter of "public concern," that

she did not suffer an adverse employment action, and that she

did not establish a causal connection between her speech and any

alleged adverse employment action.

**1. Matter of Public Concern**

---

[5] This test applies when the public employee is speaking as a
citizen, as opposed to as a public employee in his/her official
capacity. See Smith, 776 F.3d at 118 (citing Lane v. Franks, 134
S. Ct. 2369, 2378 (2014)); see also Lane, 134 S.Ct. at 2378
("In Garcetti, we described a two-step inquiry into whether a
public employee's speech is entitled to protection: 'The first
requires determining whether the employee spoke as a citizen on
a matter of public concern. If the answer is no, the employee
has no First Amendment cause of action based on his or her
employer's reaction to the speech. If the answer is yes, then
the possibility of a First Amendment claim arises. The question
becomes whether the relevant government entity had an adequate
justification for treating the employee differently from any
other member of the general public.' 547 U.S., at 418, 126 S.Ct.
1951).")

"Speech by a public employee is on a matter of public concern if it relates 'to any matter of political, social, or other concern to the community.'" Johnson v. Ganim, 342 F.3d 105, 112 (2d Cir. 2003) (quoting Connick v. Myers, 461 U.S. 138, 146 (1983); Garcia v. State Univ. of N.Y. Health Sci. Ctr., 280 F.3d 98, 105 (2d Cir.2001)). "Speech that, although touching on a topic of general importance, primarily concerns an issue that is 'personal in nature and generally related to [the speaker's] own situation' . . . does not address matters of public concern." Jackler v. Byrne, 658 F.3d 225 (2d Cir. 2011) (quoting Ezekwo v. NYC Health & Hospitals Corp., 940 F.2d 775, 781 (2d Cir. 1991)) (alterations in original). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Johnson, 342 F.3d 112 (quoting Connick, 461 U.S. at 147-48). Though this inquiry "may be somewhat fact-intensive, it presents a question of law for the court to resolve." Id. (citing Morris v. Lindau, 196 F.3d 102, 110 (2d Cir.1999)).

The plaintiff alleges that "[i]ts sole member, Ronna Marie Guiliano has spoken out in the community about her belief that the contract is unlawful and violates the Federal laws including the Medicare Act and the Final Rule and seeking to change various provisions of the contract." (Complaint, Count V, ¶ 30.)

-18-

Although this section of the Complaint seems to indicate that
Guiliano spoke out about her own contract, elsewhere in the
Complaint, she alleges that she "spoke out against [the cost
settling] policy." (Complaint Preliminary Statement.) Construing
the factual allegations in the light most favorable to the
plaintiff, as the court must at this stage, the court construes
the Complaint as alleging that she spoke out against the policy
and not just with respect to her own contract. Thus, the
plaintiff has alleged that her speech addresses a concern that
the state of Connecticut has adopted a policy that violates
federal law. Such an issue is a matter of public concern as "the
law is well established that '[d]iscussion regarding current
government policies and activities is perhaps the paradigmatic
matter of public concern.'" Brown v. City of Waterbury Board of
Education, 722 F.Supp.2d 218, 231 (D. Conn. 2010) (quoting
Harman v. City of New York, 140 F.3d 111, 118 (2d Cir. 1988)).
Although the plaintiff may have been prompted to speak out based
on her own experience with the policy, "motive is 'not
dispositive' in the 'matter of public concern' inquiry." Id. at
230 (quoting Sousa v. Roque, 578 F.3d 164, 170 (2d. Cir 203)).
Thus, the plaintiff has alleged facts sufficient to state a
plausible claim that she was speaking on a matter of public
concern.

## 2. Adverse Employment Action

The Second Circuit has defined an adverse action in a First Amendment retaliation case as "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights."

Vinci v. Quagliani, 889 F. Supp. 2d 348, 357 (D. Conn. 2012) (quoting Washington v. Rockland, 373 F.3d 310, 320 (2d Cir. 2004)). For a First Amendment retaliation claim, the plaintiff need not "demonstrate a material change in employment terms or conditions"; the plaintiff must merely demonstrate that the action is "more than de minimis." Zelnik v. Fashion Institute of Technology, 464 F.3d 217, 226 (2d Cir. 2006). Thus, included among actions considered to be "adverse employment actions" are not only "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand," but also less severe sanctions like "negative evaluation letters, express accusations of lying, assignment of lunchroom duty, reduction of class preparation periods, failure to process teacher's insurance forms, transfer from library to classroom teaching as an alleged demotion, and assignment to classroom on fifth floor which aggravated teacher's physical disabilities." Id. "[W]hether an undesirable unemployment action qualifies as being 'adverse' is a heavily fact-specific, contextual determination." Id. at 226 (quoting Hoyt v. Andreucci, 433 F.3d 320, 328 (2d Cir. 2006). "[A] combination of seemingly minor incidents [may] form the

basis of a constitutional retaliation claim once they reach a critical mass." <u>Phillips v. Bowen</u>, 278 F.3d 103, 109 (2d Cir. 2002).

The plaintiff alleges that in retaliation for her speaking out, the DDS has "targeted her employees" to entice them to violate their non-compete agreements and leave Inclusion First, contacted clients to persuade them to receive their services from DDS instead of Inclusion First, and subjected the plaintiff to "multiple and harassing audits." (Complaint, Count V, ¶ 31.) The plaintiff alleges that such actions have been so damaging to Inclusion First that "as a result, the business may have to close." (Complaint, Count V, ¶ 32.) The court must accept these factual allegations as true at this stage. It is not implausible to imagine that a person of ordinary firmness might be deterred from exercising her First Amendment rights if doing so would result in her being subjected to behavior that might force her to close her business. Accordingly, the plaintiff has alleged facts that could support a conclusion that she has suffered an "adverse employment action."

### 3. Causal Connection

The plaintiff has failed to adequately plead a causal connection between her speech and an adverse employment action.

In order to establish causation, the plaintiff must do more than offer "conclusory assertions of retaliatory motive." Ricciuti v. Gyzenis, 832 F.Supp.2d 147, 158-59 (D. Conn. 2011) (quoting Deters v. Lafuente, 368 F.3d 185, 190 (2d Cir.2004)). The plaintiff "must aver some tangible proof demonstrating that [the] protected [activity] animated [the adverse employment decision]." Id. at 159 (alterations in original) (quoting Washington v. Cnty. of Rockland, 373 F.3d 310, 321 (2d Cir.2004)). To the extent that the plaintiff makes any allegation at all with respect to DDS's motive, she alleges that DDS has acted "in an attempt to interrupt [her] business." (Complaint, Count V, ¶ 32.) Such a conclusory assertion of retaliatory motive is insufficient to suggest a causal connection.

A plaintiff "can . . . establish a causal connection to support a . . . retaliation claim by 'showing that the protected activity was closely followed in time by the adverse [employment] action." Nagel v. Marron, 663 F.3d 100, 110 (2d Cir. 2011). The only extent to which there is a suggestion of a temporal connection between the plaintiff's speech and retaliatory action is the allegation in the preliminary statement of the Complaint that "[w]hen the Plaintiff's principal and sole member spoke out against this policy . . . and the detrimental nature of the policy on her business, DDS

through its employees retaliated against plaintiff." (Complaint,
Preliminary Statement) (emphasis added). However, the plaintiff
does not give any timeframe with respect to her "speaking out"
and the alleged retaliatory actions. Thus, there are
insufficient facts alleged to suggest a causal connection
between her speech and the retaliatory actions based on temporal
connection proximity.

Because the plaintiff has not pled facts sufficient to
establish a causal connection between her exercise of her First
Amendment rights and the alleged adverse employment actions by
DDS, the plaintiff has failed to state a plausible claim for
First Amendment retaliation, and her claim is being dismissed
pursuant to Fed. R. Civ. P. Rule 12(b)(6). However, because the
nature of the pleading deficiency in Count V is such that the
plaintiff may be able to remedy it, Count V is being dismissed
with leave to file, within 30 days of the date of this ruling, a
motion for leave to amend the Complaint, together with a copy of
the proposed revision.

### F. Declaratory Judgment (Count VI)

In Count VI, the plaintiff alleges that "[t]he harm to the
Plaintiff is a direct and indirect result of the defendant's
conduct and is sufficiently real and imminent to warrant the
issuance of a conclusive declaratory judgment clarifying the

legal relationship of the parties" pursuant to 28 U.S.C. § 2201.

(Complaint, Count VI, ¶¶ 33-34.) The defendants argue that the

plaintiff's claims should be dismissed for failure to state a

claim upon which relief can be granted. The court agrees.

> [A] request for relief in the form of a declaratory judgment
> does not by itself establish a case or controversy involving
> an adjudication of rights. Skelly Oil Co. v. Phillips
> Petroleum Co., 339 U.S. 667, 671-72, 70 S.Ct. 876, 879-80, 94
> L.Ed. 1194 (1950). In fact, the statute authorizing the
> declaratory judgment remedy explicitly incorporates the
> Article III case or controversy limitation. See 28 U.S.C. §
> 2201 (1988) ("In a case of actual controversy within its
> jurisdiction...."); Aetna Life Ins. Co. v. Haworth, 300 U.S.
> 227, 239-40, 57 S.Ct. 461, 463-64, 81 L.Ed. 617 (1937). The
> Declaratory Judgment Act does not expand jurisdiction. Skelly
> Oil, 339 U.S. at 671, 70 S.Ct. at 878. Nor does it provide an
> independent cause of action. Its operation is procedural only—
> to provide a form of relief previously unavailable. Aetna Life
> Ins. Co., 300 U.S. at 240, 57 S.Ct. at 464. Therefore, a court
> may only enter a declaratory judgment in favor of a party who
> has a substantive claim of right to such relief.

In re Joint E. & S. Dist. Asbestos Litig., 14 F.3d 726, 731 (2d

Cir. 1993). Count VI is not based upon any independent cause of

action. Thus, the plaintiff has failed to plead a claim upon

which relief can be granted and Count VI is being dismissed,

pursuant to Fed. R. Civ. P. Rule 12(b)(6).


**IV.  CONCLUSION**

For the reasons set forth above, the defendants' Joint

Motion to Dismiss (Doc. No. 19) and (Doc. No. 22) is hereby

GRANTED, with leave for the plaintiff to file, within 30 days of

the date of this ruling, a motion for leave to amend the Complaint, together with a copy of the proposed revision.

It is so ordered.

Dated this 23rd day of September 2015, at Hartford, Connecticut.

_____/s/_____
Alvin W. Thompson
United States District Judge
